**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1177
_____

JIAN LI ZHENG, a/k/a Seo Won,
Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-570-499)
Immigration Judge:  Honorable Henry Dogin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 16, 2011
Before:  SLOVITER, CHAGARES and WEIS, Circuit Judges
Opinion filed:  March 17, 2011
_____

OPINION
_____

PER CURIAM.

Jian Li Zheng petitions for review of the Board of Immigration Appeals'

("BIA") decision, which upheld the Immigration Judge's ("IJ") order denying Zheng's

request for asylum and related relief, and ordering his removal to China.  For the reasons

that follow, we will deny the petition for review.

# I

Zheng, a citizen of China, entered the United States illegally in 2004. He was placed in removal proceedings, where he conceded removability, but sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Zheng claimed that he suffered persecution when Chinese authorities beat him for intervening when they attempted to terminate his wife's unauthorized pregnancy.

Zheng testified that he and his wife married in 2000, and that they have one daughter, who was born in 2001. After the birth of their daughter, Zheng's wife was implanted with an IUD, and was required to attend regular checkups. During her January 2002 checkup, at which the petitioner was not present, the doctor discovered that the wife's IUD had failed and that she was pregnant. She was forced to terminate the pregnancy, and was then refitted with an IUD.

In 2003, Zheng and his wife hired a private doctor to remove the IUD because they intended to have another child. Zheng's wife became pregnant, and they went into hiding at his aunt's house so that the wife could avoid her IUD checkups and keep the child. In October 2003, when Zheng's wife was about five months pregnant, officials visited the aunt's house and conducted an inspection. The officials determined that Zheng's wife was pregnant without authorization, and attempted to take her into custody. Zheng stepped in front of his wife to protect her, but the officials grabbed his hands, beat him about the head, shoulder, and chest, and then pushed his head against the wall. The beating lasted a few minutes. The officials took Zheng's wife to the hospital,

where she was forced to endure a second abortion. Although Zheng immediately followed his wife to the hospital, he was not allowed to see her until the next morning, after the abortion was performed.

With regard to the beating he endured, Zheng testified that, at an unspecified time, he sought treatment for the injuries he sustained while trying to protect his wife, and that the treatment took between two and three hours. Notably, although he stated that he had obtained his medical records from China, he never submitted them to support his claim for relief. In addition, although Zheng submitted letters from his aunt -- who was present when his wife was taken away -- and his wife, Zheng's aunt did not mention at all that he was beaten for opposing the family planning officials, and Zheng's wife mentioned only that Zheng "tried to stop them but was beaten down." A.R. 294. Further, Zheng did not obtain medical documentation proving that his wife endured any abortions, although he did submit records pertaining to her IUD.

The IJ denied relief, reasoning that Zheng failed to corroborate his allegations that his wife was subjected to forced abortions and that he was assaulted for trying to prevent one such abortion. The BIA agreed, and held that, even if Zheng had produced corroborating evidence, he would have failed to establish that he suffered persecution as a result of his resistance to China's family planning policies. The BIA further reasoned that Zheng did not demonstrate a well-founded fear of future persecution, given that he remained in China for one year without further incident. Zheng filed a timely petition for review of the Board's decision.

3

## II

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because the BIA issued its own opinion, we review its decision rather than that of the IJ. See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005). However, we also look to the decision of the IJ to the extent that the BIA deferred to or adopted the IJ's reasoning. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). We review the Agency's factual determinations for substantial evidence, and will uphold such determinations unless any reasonable adjudicator would be compelled to reach a contrary conclusion. See Fiadjoe v. Att'y Gen., 411 F.3d 135, 153 (3d Cir. 2005). Zheng challenges the BIA's decision in several respects. However, we need not consider all of his arguments because we agree with the BIA that, even if Zheng had presented evidence corroborating his claim that he resisted the family planning officials, he would not have established that he suffered persecution or that he harbors a well-founded fear of future persecution so as to qualify for asylum.

Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). However, it "does not encompass all treatment that our society regards as unfair, unjust or even unlawful or unconstitutional." Id. Generally, "isolated incidents that do not result in serious injury do not rise to the level of persecution." Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005). Zheng was beaten for a few minutes, and he suffered minor injuries. Although he required some medical

4

treatment, he was able to immediately follow the family planning officials to the hospital where they took his wife. We are not compelled to disagree with the Agency's conclusion that the assault he endured, though unfortunate, did not amount to persecution.

To demonstrate eligibility for asylum based on a fear of future persecution, an applicant must demonstrate that he "has a genuine fear, and that a reasonable person in [his] circumstances would fear persecution if returned to [his] native country." Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003). To satisfy the objective prong, a petitioner must show that he would be individually singled out for persecution or demonstrate a pattern or practice of persecution of similarly-situated individuals. See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005). The BIA reasoned that Zheng failed to make such a showing: aside from the beating he endured, he was never arrested or otherwise punished for resisting the family planning authorities, and he remained in China for a year without further incident. Zheng presents no reasons in his petition for review to question the Board's determination in that regard.

Because Zheng was ineligible for asylum, we agree that he was also unable to meet the higher standard applicable to applications for withholding of removal. See Sioe Tjen Wong v. Att'y Gen., 539 F.3d 225, 236-37 (3d Cir. 2008). Nor did he demonstrate eligibility for CAT protection. See Kamara v. Att'y Gen., 420 F.3d 202, 212-13 (3d Cir. 2005).

Accordingly, we will deny the petition for review.

5